**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOHN MIMOSA MARKS**, <br><br> Plaintiff, <br><br> v. <br><br> **DONALD J. TRUMP, ET AL.**, <br><br> Defendants. | Case No.: 4:25-CV-06932-YGR <br><br> **ORDER DENYING MOTION FOR TRO, GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, DISMISSING COMPLAINT** <br><br> Re: Dkt. Nos. 2, 4, 5 |

Plaintiff John Mimosa Marks, proceeding *pro se*, files this complaint and motion for a Temporary Restraining Order ("TRO") seeking to halt enforcement of Executive Order 14321, published at 90 F.R. 35817 (the "EO"). Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion for TRO, **GRANTS** plaintiff's request to proceed *in forma pauperis*, and **DISMISSES** the complaint.[1]

**I.  BACKGROUND**

The EO, promulgated on July 24, 2025 by defendant President Trump is titled: "Ending Crime and Disorder on America's Streets." The EO directs the Attorney General ("AG") and the Secretaries of Health and Human Services ("HHS"), Housing and Urban Development ("HUD"), and Transportation to take various steps towards the stated goal of "restore[ing] public order" by "[s]hifting homeless individuals into long-term institutional settings for humane treatment through the appropriate use of civil commitment." The named officials are directed to, *inter alia*, work with state and local officials to implement standards "that allow for the appropriate commitment and treatment of individuals with mental illness who pose a danger to others or are living on the streets

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

1  and cannot care for themselves," review discretionary grants to determine whether priority for those
2  grants may be awarded to jurisdictions enforcing administration priorities, and increase data
3  collection and sharing between local, state, and federal officials.  The EO's final section states:

> Sec. 6. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:
>
> (i) the authority granted by law to an executive department or agency, or the head thereof; or
>
> (ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.
>
> (b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.
>
> (c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

90 F.R. 35819.

The complaint alleges as follows:

Plaintiff is an unhoused individual residing in a trailer in Oakland.  (Dkt. No. 1, Complaint ("Compl.") at ¶ 50.)  Plaintiff has been unhoused since 2020 and suffers from severe mental and physical health diagnoses and disabilities. (*Id.* ¶ 51.)  Plaintiff has been subject to involuntarily psychic detention several times. (*Id.*)  "Involuntary detention in nonmedical or punitive settings would substantially increase Plaintiffs risk of shunt blockage, uncontrolled seizures, hypertensive crisis, respiratory failure, and psychiatric decompensation," which plaintiff refers to as a "life-threatening risk."  (*Id.* ¶¶ 51-52.)

Plaintiff has "[h]igh public visibility as a candidate for office, nonprofit leader, and outspoken critic of punitive homeless policies [which] further heighten Plaintiff's vulnerability under the new federal mandate."  (*Id.* ¶ 53.)  Specifically, plaintiff's encampment has been the target of violent armed robbery in the past, and local law enforcement have failed to intervene appropriately so plaintiff "continues to experience ongoing harassment, threats of displacement, and targeted official surveillance." (*Id.* ¶ 65.)

> Against this backdrop of violence and insecurity, the threatened enforcement of the federal Executive Order-authorizing involuntary

2

> civil commitment of unhoused individuals poses a new and credible danger to Plaintiffs liberty, safety, and well-being. The pattern of state and local indifference, when combined with the sweeping enforcement powers mandated by the Executive Order, creates a real and imminent risk that Plaintiff will face unconstitutional detention, medical neglect, and retaliation for protected advocacy . . . .

(*Id*.) Plaintiff has already been subject to retaliation for being outspoken, which has taken the form of exclusion from public services and being "singled out for more aggressive enforcement action during site closures [leading to] further loss of shelter." (*Id*. ¶ 80.)

Plaintiff further alleges heightened vulnerability from the EO due to several additional factors. First, plaintiff cites the President's "public record [which] includes documented instances of retaliating against political critics and adversaries." (*Id*. ¶ 130.) Second, plaintiff's "prior mental health holds, chronic and complex medical conditions, and public profile make Plaintiff an obvious target under the EO's broad and ambiguous enforcement authority." (*Id*. ¶ 161.) Third, plaintiff points to public statements made by the President surrounding the EO, including statements made at a press conference that homeless persons in Washington, DC ""must move out, IMMEDIATELY," and a statement that:

> local police have "the authority to do whatever the hell they want," including breaking into homes and encampments, arresting individuals, and conducting searches without warrants or due process, effectively nullifying local authority and legal safeguards.

(*Id*. ¶¶ 183-84.) Together, these present an "imminent threat" to plaintiff's safety and well-being. (*Id*. 187-88.)

As such, plaintiff's complaint seeks numerous forms of declaratory and injunctive relief. Specifically, plaintiff seeks to represent a class of individuals defined as:

> all persons in the United States, presently unhoused or experiencing housing instability, who are or will be subject to enforcement of the Executive Order titled "Ending Crime and Disorder on America's Streets," signed July 24, 2025 including, but not limited to, those identified as members of the [enumerated] subclasses.

(*Id*. ¶ 6.) The subclasses listed are: those with defined disabilities under the Americans with Disabilities Act ("ADA"); families with minor children; those experiencing homelessness who are

3

1  Black, Indigenous, or People or Color; and United States military veterans experiencing
2  homelessness. (*Id.* ¶¶ 2-5.)

3        Plaintiff further moves for a TRO enjoining its enforcement with regard to both civil
4  detention and the reversal of judicial or precedents or consent decrees currently in effect. The
5  proposed TRO further seeks an order not to engage in spoliation of evidence relevant to the matter.
6  Additionally, plaintiff has filed a motion to proceed *in forma pauperis*. (Dkt. No. 2.)

7  **II. LEGAL FRAMEWORK**

8      **A. TRO Standard**

9        "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.*
10 *Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction
11 must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm
12 in the absence of preliminary relief, that the balance of equities tips in his favor, and that an
13 injunction is in the public interest." *Id.* at 20.

14       In the Ninth Circuit, "serious questions going to the merits and a hardship balance that tips
15 sharply toward the plaintiff can support issuance of an injunction" where the plaintiff has shown
16 likelihood of irreparable harm and that the public interest favors the injunction. *All. For the Wild*
17 *Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). That said, "[l]ikelihood of success on the
18 merits is 'the most important' factor . . . ." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)
19 (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)). The plaintiff
20 must, "by a clear showing, carr[y] the burden of persuasion." *Norbert v. City and Cnty. of San*
21 *Francisco*, 10 F.4th 918, 927 (9th Cir. 2024) (emphasis in original).

22     **B. *In Forma Pauperis* Screening**

23       Even where a court grants an application to proceed *in forma pauperis*, the court is not
24 obligated to permit plaintiff to prosecute the claim under all circumstances. A court is under a
25 continuing duty to dismiss a case filed without payment of the filing fee whenever it determines
26 that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be
27 granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28
28 U.S.C. § 1915(e)(2)(B)(i)–(iii). If the Court dismisses a case pursuant to section 1915(e)(2)(B), the

plaintiff may still file the same complaint by paying the filing fee. This is because the court's section 1915(e)(2)(B) dismissal is not on the merits, but an exercise of the court's discretion under the IFP statute. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

To make the determination under 28 U.S.C. section 1915(e)(2)(B), courts assess whether plaintiff states an arguable factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227 (9th Cir. 1984) (internal quotation marks omitted). Courts have the authority to dismiss complaints founded on "wholly fanciful" factual allegations for lack of subject matter jurisdiction. *Id.* at 1228 (internal quotation marks omitted). A court can also dismiss a complaint where it is based solely on conclusory statements, naked assertions without any factual basis, or allegations implausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see also Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam).

### III. ANALYSIS

The Court notes at the outset that under Federal Rule of Civil Procedure 23(a), it must deny the request to proceed as a class action. Plaintiff brings this action *pro se* on behalf of himself seeking individual relief but also attempts to reserve the right to move for class certification to seek class-wide relief. (Compl. ¶ 1-10, 395-396.) The proposed class would consist of "all persons in the United States, presently unhoused or experiencing housing instability, who are or will be subject to enforcement of" the EO. (Compl. ¶ 6.)

However, "a plaintiff proceeding pro se may not pursue claims on behalf of others." *McZeal v. JPMorgan Chase Bank, N.A.*, 735 F. App'x 913, 916 (9th Cir. 2018) (affirming the district court's order striking plaintiff's class action claims) (citing *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)). The privilege to represent oneself *pro se* provided by 28 U.S.C. § 1654 is personal to the litigant and therefore does not extend to other parties or entities. *See McShane v. United States,* 366 F.2d 286, 288 (9th Cir.1966).

As a *pro se* litigant, plaintiff may not pursue claims on behalf of other individuals. Therefore, plaintiff's claims on behalf of a putative class are **DENIED**.

The Court must also dismiss plaintiff's remaining claims for individual relief due to lack of standing. The Article III case-or-controversy requirement requires a plaintiff to have standing to

bring their claims. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). A demonstration of standing allows courts to satisfy the requirement that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (emphasis in original) (internal quotation marks and citations omitted). The Constitution requires three elements for standing: (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) the injury must be "likely" not merely "speculative." *Lujan*, 504 U.S. at 560–61 (alterations in original) (citations and footnote omitted). "The causation requirement [] rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

Plaintiff argues he has Article III standing because (1) he faces the "actual and imminent injury" of "risk of involuntary commitment"; (2) caused by the EO; and (3) plaintiff is exposed to "imminent unconstitutional detention." (Compl. ¶¶ 39-44.)

Plaintiff does not allege that he has been subject to detention since the EO was published in July of this year, nor does he allege any facts that suggest there are plans to imminently implement *his* involuntary commitment specifically. Rather, plaintiff argues no fact development is necessary because the EO itself, as presently operative, causes plaintiff's injury. (*Id.* ¶ 43.)

At various points in his complaint, plaintiff claims the EO "authoriz[es]" or "mandates nationwide involuntary civil commitment of homeless individuals" and "sweeping enforcement powers." (*Id.* ¶¶ 46, 65.) Plaintiff further argues that the EO creates a specific risk that plaintiff will be "targeted" for involuntary commitment because of his disability history, prior 5150 designation, and speech protected by the First Amendment. (*Id.* ¶ 163.)

However, the EO on its face does not create "sweeping enforcement powers" or "mandate nationwide involuntary civil commitment." Section 6 of the EO states, "Nothing in this order shall be construed to impair or otherwise affect the authority granted by law to an executive department or agency, or the head thereof." 90 FR 35820. In other words, the EO does not create new enforcement authority or powers.

There are three provisions relevant to plaintiff's concern about "a mandate" for involuntary commitment. Section 2 instructs the AG, in consultation with the HHS Secretary, to seek where appropriate reversal of judicial precedents and termination of consent decrees that impede the pronounced general policy "encouraging civil commitment of individuals with mental illness." 90 FR 35817. This direction essentially instructs government actors to identify any judicial precedents or consent decrees that are suitable for reversal and, if any exist, take action to seek that reversal, such as filing a lawsuit on behalf of the United States. This does not create an imminent threat of unconstitutional detention to plaintiff.

Section 2 instructs the AG, in consultation with the HHS Secretary, to "provide assistance to State and local governments . . . [to implement] maximally flexible civil commitment, institutional treatment, and 'step-down' treatment standards." 90 FR 35817. Section 3 instructs the AG, the HHS Secretary, the HUD Secretary, and the Secretary of Transportation to assess their discretionary grant programs and determine whether priority for those grants may be given to grantees in States and municipalities that enforce or adopt standards to move homeless individuals "into treatment centers or other appropriate facilities via civil commitment." 90 FR 35817-35818. In short, these provisions instruct government actors to support preexisting state and local programs, including those that provide for civil commitment. As discussed above, this does not change legal rights or allocation of funds specifically appropriated by Congress. Nor does it, on its face, order any federal action that would result in plaintiff's unconstitutional detention.

Plaintiff also argues that recent actions by the President create an imminent threat to plaintiff. Specifically, plaintiff alleges President Trump announced increased federal law enforcement presence in Washington, D.C. and made statements that these law enforcement officers have "the authority to do whatever the hell they want" and that homeless individuals in D.C. "must move out, IMMEDIATELY." (Compl. ¶ 183-184.) Plaintiff argues these actions "constitute part of a broader federal initiative aimed at controlling homelessness" in D.C. and imply similar threats for Oakland, California. Plaintiff does not allege that the President or any other federal actor has explicitly made any similar statements with regards to Oakland, California.

Simply because an executive announces a policy for one jurisdiction does not imply that he will do so everywhere else.

The Supreme Court recently emphasized that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 599 U.S. 670, 674 (2023) (citing *Linda R. S. v. Richard D.*, 410 U. S. 614, 619 (1973)).  Here, plaintiff has not been committed, nor has he been personally threatened with involuntary commitment on the basis of the EO.  Instead, he claims the EO on its face constitutes a threat.  The EO instructs federal agencies to support preexisting state and local programs that may include civil commitment; it does not threaten to effectuate involuntary commitment of any specific group or individual.

Even taking together the EO on its face with the alleged actions by President Trump in recent months, plaintiff has not sufficiently alleged an injury-in-fact.  Moreover, if plaintiff were involuntarily committed by a state or local government, as he admits he already has been (Compl. ¶¶ 39, 163), he could not show that the EO had more than an "attenuated link" to his detention.  Therefore, plaintiff lacks standing to bring this action.  Based on the nature of the action, the Court finds that any amendment would be futile.

### IV. CONCLUSION

For the reasons stated above, the Court rules as follows:

- the motion to proceed *in forma pauperis* is **GRANTED**;
- the motion for a Temporary Restraining Order is **DENIED;** and
- the complaint is **DISMISSED WITHOUT LEAVE TO AMEND**.

This terminates the case.  The clerk of the court shall close the file.

**IT IS SO ORDERED**.

Date: August 19, 2025

_____
**YVONNE GONZÁLEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**